E-FILED
Monday, 02 November, 2026 10:49:22 AM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **BLANTON SIMS,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 26-2268** |
| | ) | |
| **B. VANDEUANTER, *et al.*,** | ) | |
| **Defendants.** | ) | |

**<u>MERIT REVIEW ORDER</u>**

Plaintiff, proceeding *pro se*, filed a Complaint under 42 U.S.C. § 1983 alleging his constitutional rights were violated while he was incarcerated at Danville Correctional Center. (Doc. 1). The Court must "screen" Plaintiff's Complaint, and through such process, identify and dismiss any legally insufficient claim, or the entire action if warranted. 28 U.S.C. § 1915A. A claim is legally insufficient if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *Id.* In reviewing the Complaint, the Court accepts the factual allegations as true, liberally construing them in Plaintiff's favor. *See Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). Conclusory statements and labels are insufficient, however. Enough facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (citation omitted).

**ALLEGATIONS**

Plaintiff files suit against Defendants Food Service Manager B. Vandeuanter, Warden Trent Allen, Chaplain Chris Easton, and Food Service Director John Doe.

According to the Complaint, while Plaintiff was housed at Stateville Correctional Center, Plaintiff's religion of Islam was on file with the Illinois Department of Corrections ("IDOC"). As a devout Muslim, Plaintiff adhered to a Halal diet. However, when Plaintiff was transferred to

Danville in September 2024, Plaintiff alleges he did not receive proper Halal meals, despite his religion and dietary requirements.

On November 24, 2024, Plaintiff filed a grievance to request a proper Halal diet. The Grievance Counselor contacted Defendant Food Service Manager Vandeuanter, who stated that "Plaintiff is correct and dietary is in the process of correcting the issue." (Doc. 1 at p. 6). Nevertheless, a proper Halal diet was never provided.

Plaintiff alleges meals were served cold and lacked variety during Ramadan between February 18, 2026, and March 19, 2026. In June and July 2026, Defendants Vandeuanter and Food Service Director John Doe changed the Halal meals by discontinuing shredded beef, tuna, mackerel, fish steaks, and sardines. Instead, Defendants Vandeuanter and John Doe allegedly served "little black trays" of cheese ravioli, stuffed shells, baked ziti, Salsbury steaks, and stuffed cabbage, which are not proper Halal meals. *Id.* at p. 8. Plaintiff alleges the meals caused him to develop "serious digestive medical problems." *Id.* at p. 9.

Plaintiff also claims that vegetables were served cold, as if taken directly out of the can. Plaintiff alleges non-Islamic inmates received cooked vegetables that were served hot. Plaintiff also alleges the meals Muslim inmates receive do not provide sufficient calories. Plaintiff alleges he is forced to supplement his diet by purchasing food at the commissary, which does not offer Halal dietary items.

In addition to filing grievances, Plaintiff alleges he spoke with Defendant Chaplin Easton about the improper Halal meals, to no avail. Although Plaintiff was approved for a Halal diet upon his arrival at Danville, Defendant Easton told Plaintiff he had no control over what dietary served.

## ANALYSIS

### I. Free Exercise Clause of the First Amendment

Individuals in custody have a First Amendment right to reasonable opportunities to practice their religion, subject to the legitimate penological concerns of the prison. *Maddox v. Love*, 655 F.3d 709 (7th Cir. 2011); *Ortiz v. Downey*, 561 F.3d 664, 669 (7th Cir. 2009). The Free Exercise Clause of the First Amendment prohibits the government from imposing a "substantial burden" on a "central religious belief or practice." *Isby-Israel v. Lemmon*, No. 13-172, 2016 WL 3072177, at *4 (S.D. Ind. June 1, 2016) (internal quotation omitted). "[A] substantial burden on the free exercise of religion . . . is one that forces adherents of a religion to refrain from religiously motivated conduct, inhibits or constrains conduct or expression that manifests a central tenet of a person's religious beliefs, or compels conduct or expression that is contrary to those beliefs." *Id.* (quoting *Koger v. Bryan*, 523 F.3d 789, 798-99 (7th Cir. 2008)). Denying an inmate access to a diet that is required by his religion places a substantial burden on the inmate's free exercise rights. *Thompson v. Holm*, 809 F.3d 376, 380 (7th Cir. 2016).

Based on his allegations, the Court finds that Plaintiff has stated a plausible claim under the Free Exercise Clause of the First Amendment against Defendants Food Service Manager Vandeuanter, Food Service Director John Doe, and Chaplain Easton based on allegedly denying Plaintiff a Halal diet.

### II. Equal Protection Clause of the Fourteenth Amendment

The Equal Protection Clause forbids a state to "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. "All equal protection claims…are based on the principle that, under 'like circumstances and conditions,' people must be treated alike, unless there is a rational reason for treating them differently." *LaBella Winnetka, Inc.*

*v. Vill. of Winnetka*, 628 F.3d 937, 941 (7th Cir. 2010) (citations omitted). To state an equal protection claim, a plaintiff must establish that a state actor treated him differently from others similarly situated because of his membership in a particular class and that the state actor did so purposefully. *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000), *abrogated by Savory v. Cannon*, 947 F.3d 409 (7th Cir. 2020) (citing *Washington v. Davis*, 426 U.S. 229, 239-42 (1976)). Discriminatory purpose "implies that the decision[-]maker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effects on the identifiable group." *Shango v. Jurich*, 681 F.2d 1091, 1104 (7th Cir. 1982) (citation omitted).

Plaintiff alleges non-Islamic inmates receive cooked vegetables while Muslim inmates receive cold vegetables and meals that do not include sufficient calories. Based on his allegations, Plaintiff is permitted to proceed on a claim under the Equal Protection Clause of the Fourteenth Amendment against Defendants Food Service Manager Vandeuanter, Food Service Director John Doe, and Chaplain Easton.

**III. RLUIPA**

Plaintiff alleges Defendants violated his rights under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc-1(a). Under RLUIPA, officials may not substantially burden an individual's religious exercise unless there is a compelling government interest at stake. RLUIPA provides:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person--
>
> (1) is in furtherance of a compelling governmental interest; and

(2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). Sovereign immunity shields state officials from monetary damages in their official capacity. *Sossamon v. Texas*, 131 S. Ct. 1651, 1663 (2011). RLUIPA allows for declaratory and injunctive relief, but not compensatory damages, and may be asserted against defendants in their official, but not individual capacities. *Grayson v. Schuler*, 666 F.3d 450, 451 (7th Cir. 2012).

The Court finds that Plaintiff has stated a plausible claim under RLUIPA against Defendant Warden Allen in his official capacity, as Warden Allen appears to be the proper Defendant who would be responsible for ensuring any injunctive relief was carried out. *See Oliver. Harner*, No. 14-CV-315-NJR-DGW, 2016 WL 1117084, at *6 (S.D. Ill. Mar. 22, 2016) ("[T]he proper defendants are those who are responsible for ensuring that any injunctive relief is carried out.").

**IV. Warden Trent Allen**

Plaintiff's Complaint does not include any specific allegations to demonstrate Defendant Warden Allen was personally involved in any constitutional deprivation in his individual capacity. "Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation." *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996) There is no *respondeat superior* under § 1983. In other words, Defendant Allen cannot be liable based only on his supervisory position. *Doe v. Purdue Univ.*, 928 F.3d 652, 664 (7th Cir. 2019). Officials are accountable for their own acts; they are not vicariously liable for the conduct of subordinates. *See Ashcroft v. Iqbal*, 556 U.S. 662, 667 (2009); *Vance v. Rumsfeld*, 701 F.3d 193, 203-05 (7th Cir. 2012) (en banc). If prison officials are named, they must be named in their individual capacities, and Plaintiff must allege that the official personally participated in the deprivation or was deliberately reckless as to

the misconduct of subordinates or was aware and condoned, acquiesced, or turned a blind eye to it. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). Any claims against Defendant Allen in his individual capacity are dismissed without prejudice.

Finally, Defendant Food Service Director John Doe cannot be served. As such, the Court *sua sponte* names Defendant Allen, in his official capacity as Warden, to assist Plaintiff with identifying John Doe's real name. *See Donald v. Cook Cnty. Sheriff's Dep't*, 95 F.3d 548, 556 (7th Cir. 1996) (concluding that a court may allow the case to proceed to discovery against a high-level official with the expectation that he will aid in identifying any Doe Defendants). Plaintiff may propound written discovery requests upon Warden Allen aimed solely at identifying Defendant John Doe. Ultimately, it is Plaintiff's responsibility to identify Defendant John Doe and file a Motion to Substitute his real name. The failure to do so will result in the dismissal of Defendant John Doe without prejudice.

**MOTION TO REQUEST COUNSEL**

Plaintiff filed a Motion to Request Counsel asking the Court to appoint an attorney to represent him. (Doc. 5). "There is no right to court-appointed counsel in federal civil litigation." *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014). When evaluating a Motion to Request Counsel, the Court must consider: "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?" *Pruitt v. Mote*, 503 F.3d 647, 655 (7th Cir. 2007). "When evaluating a plaintiff's competence, district courts should normally consider the plaintiff's literacy, communication skills, education level, and litigation experience." *Bracey v. Grondin*, 712 F.3d 1012, 1018 n.3 (7th Cir. 2013) (citing *Pruitt*, 503 F.3d at 655). The inquiry is individualized, taking all the relevant facts into consideration, including the stage of the

litigation. *Navejar v. Igiola*, 718 F.3d 692, 696 (7th Cir. 2013). The Court may also consider "the perceived merits of–or likelihood of success on–an indigent plaintiff's claims in its decision whether to allocate scarce pro bono counsel resources to the case before it." *Watts v. Kidman*, 42 F.4th 755, 764 (7th Cir. 2022).

Plaintiff attached multiple letters that he sent to attorneys to seek representation. Plaintiff received a response from one attorney, who declined to represent him. The Court finds that Plaintiff made a reasonable attempt to find an attorney on his own.

Plaintiff states he completed some high school courses and has limited legal knowledge. Plaintiff's claims are not complex and involve issues of which Plaintiff has direct, personal knowledge. There is no indication that Plaintiff has any physical or psychological condition that might impair his ability to litigate this case himself. The Court finds that Plaintiff appears competent to litigate the case himself, especially at this early stage in the litigation process. Plaintiff's Motion is DENIED.

**IT IS THEREFORE ORDERED:**

1) According to the Court's Merit Review of Plaintiff's Complaint under 28 U.S.C. § 1915A, Plaintiff may proceed on a claim under the Free Exercise Clause of the First Amendment and a claim under the Equal Protection Clause of the Fourteenth Amendment against Defendants B. Vandeuanter, Food Service Director John Doe, and Chris Easton, in their individual capacities, and a claim under RLUIPA against Defendant Trent Allen, in his official capacity. Additional claims shall not be included in the case above, except in the Court's discretion on motion by a party for good cause shown under Federal Rule of Civil Procedure 15.

2) Plaintiff's Motion to Request Counsel [5] is DENIED.

3) Plaintiff's Motion for Status of Complaint [7] is MOOT.

4) This case is now in the process of service. The Court advises Plaintiff to wait until counsel has appeared for Defendants before filing any motions to give Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time unless otherwise directed by the Court.

5) The Court will attempt service on Defendants by mailing a waiver of service. If Defendants fail to sign and return a waiver of service to the Clerk within 30 days after the waiver is sent, the Court will take appropriate steps to effect formal service through the U.S. Marshals Service on Defendants and will require Defendants to pay the full costs of formal service pursuant to Federal Rule of Civil Procedure 4(d)(2).

6) Defendants shall file an answer within 60 days of the date the Clerk sends the waiver of service. A motion to dismiss is not an answer. The answer should include all defenses appropriate under the Federal Rules. The answer and subsequent pleadings shall be to the issues and claims stated in this Order. In general, an answer sets forth Defendants' position. The Court does not rule on the merits of those positions unless and until Defendants file a motion. Therefore, no response to the answer is necessary or will be considered. If Defendants have not filed an answer or appeared through counsel within 90 days of the entry of this Order, Plaintiff may file a motion requesting the status of service. After Defendants have been served, the Court will enter a scheduling order setting discovery and dispositive motion deadlines.

7) If Defendants no longer work at the address Plaintiff provided, the entity for whom Defendants worked while at that address shall submit to the Clerk Defendants' current work address, or, if not known, Defendants' forwarding address. This information shall be used only for

effectuating service. Documentation of Defendants' forwarding address shall be retained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

8) This District uses electronic filing, which means that after Defendants' counsel has filed an appearance, Defendants' counsel will automatically receive electronic notice of any motion or other paper filed by Plaintiff with the Clerk. Plaintiff does not need to mail to Defendants' counsel copies of motions and other documents that Plaintiff has filed with the Clerk. However, this does not apply to discovery requests and responses. Discovery requests and responses are not filed with the Clerk. Plaintiff must mail his discovery requests and responses directly to Defendants' counsel. Discovery requests or responses sent to the Clerk will be returned unfiled unless they are attached to and the subject of a motion to compel. Discovery does not begin until Defendants' counsel has filed an appearance and the Court has entered a scheduling order, which will explain the discovery process in more detail.

9) Defendants' counsel is hereby granted leave to depose Plaintiff at Plaintiff's place of confinement. Defendants' counsel shall arrange the time for the deposition.

10) Plaintiff shall immediately inform the Court, in writing, of any change in his mailing address and telephone number. Plaintiff's failure to notify the Court of a change in mailing address or phone number will result in dismissal of this lawsuit, with prejudice.

11) Plaintiff shall be provided a copy of all pertinent medical records upon request.

12) Within 10 days of receiving from Defendants' counsel an authorization to release medical records, Plaintiff is directed to sign and return the authorization to Defendants' counsel. The Clerk is directed to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

13) The Clerk is directed to set an internal court deadline 60 days from the entry of this Order for the Court to check on the status of service and enter scheduling deadlines.

ENTERED: November 2, 2026

s/ Michael M. Mihm
Michael M. Mihm
United States District Judge